IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

INTERNATIONAL FLAVORS &
FRAGRANCES, INC.,

      Plaintiff,

   v.

VAN EEGHEN INTERNATIONAL B.V.
and DEFRANCESCO & SONS, INC.,

_____Defendants._____/
DEFRANCESCO & SONS, INC.,

      Cross-Complainant,

   v.

VAN EEGHEN INTERNATIONAL B.V.,

      Cross-Defendant.
_____/

No. Civ. 2:06-CV-01565 JAM KJM

ORDER DENYING DEFENDANTS'
MOTION FOR RECONSIDERATION AND
GRANTING IN PART AND DENYING IN
PART DEFENDANT'S ALTERNATIVE,
MOTION FOR SUMMARY
JUDGMENT/ADJUDICATION

    This matter comes before the Court on Defendants Van Eeghen
International B.V.'s ("Van Eeghen") motion for reconsideration
of the Court's May 21, 2007 Order denying Van Eeghen's motion to
dismiss due to lack of personal jurisdiction and based upon

forum non conveniens; or in the alternative, for summary judgment/adjudication.[1]  Doc. # 119.  Plaintiff International Flavors & Fragrances, Inc.'s ("IFF") and Defendant/Cross Defendant De Francesco & Sons, Inc. ("DFI") oppose the motion. Doc. ## 128, 130.  For the reasons set forth below, Defendant's motion for reconsideration is DENIED and its motion for summary judgment/adjudication is GRANTED in part and DENIED in part.[2]

I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background underlying this case is more fully outlined in the Court's previous order denying Van Eeghen's motion to dismiss.  See Doc. # 61.  This case involves contracts that Van Eeghen entered into with IFF to supply onion powder to IFF's wholly owned Dutch affiliate, International Flavors & Fragrances I.F.F. (Netherland) B.V. (hereinafter "IFF Netherlands").  Van Eeghen and IFF Netherlands are Dutch Companies with their principal place of business in the Netherlands.  Pl's Opp., Doc. # 128, at 1-2.  IFF is a New York Corporation with its principal place of business in New York

---

[1]   Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

[2]   Objections filed by Van Eeghen (Doc. # 133, 134) are overruled for purposes of these motions. The 42 pages of 160 objections is unnecessary to the determination of these motions. See Judge William Shubb's excellent discussion of evidentiary objections in Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1118-1122 (E.D. Cal. 2006).

City, New York.  Id. at 1.  Due to the global nature of IFF's business, IFF has established affiliates and subsidiaries worldwide.  Id. at 2.  IFF Netherlands is one such wholly owned subsidiary.  Pl's First Amended Compl., Doc. # 77, ¶ 22.

Since the mid-1990s, Van Eeghen had purchased food products from DFI, a California Corporation with its place of business in Firebaugh, California.  Pl's Opp. at 2.  DFI manufactured the onion powder at issue in this case.  Id.  Between 2003-2005, IFF entered into contracts with Van Eeghaen that specified Van Eeghen must buy the onion powder from DFI.  Id.  IFF alleges that these contracts also stipulated that the onion powder could not be irradiated.  Id.

In March 2005, IFF discovered that a batch of onion powder it received from Van Eeghen was irradiated.  Id. at 3.  DFI had blended irradiated onion powder with non-irradiated onion powder because poor weather and crop conditions led to a shortage of the non-irradiated powder.  Id.  DFI and IFF contend that an agent for Van Eeghen approved the inclusion of irradiated onion powder during one of his visits to DFI's California facilities. Id.

IFF argues it had a contract with Proctor & Gamble to provide seasonings, the specifications for which required that the seasonings not be irradiated.  Pl's Opp. at 4.  IFF asserts that because it provided irradiated seasonings to Proctor &

Gamble, it became obligated to compensate Proctor & Gamble pursuant to contact for the damages.  Id.  Proctor & Gamble made a demand to IFF for compensation in the amount of $4,251,584.00.  Id.  IFF entered into a settlement agreement with Proctor & Gamble for payment of the claim related to Proctor & Gamble's use of the irradiated onion powder.  Id.  In addition, IFF argues it was forced to recall and destroy products containing the irradiated powder and as a result IFF has incurred over $6,500,000.00 in damages, exclusive of the money paid to Proctor & Gamble for settlement of its claims against IFF.  Id.

On January 23, 2006, IFF filed suit against Van Eeghen and DeFrancesco in federal court in New York.  In July 2006, that court transferred the action to the Eastern District of California under 28 U.S.C. § 1306(a).  On October 30, 2006, DFI filed a cross claim against Van Eeghen, seeking equitable contribution and indemnification.  On May 21, 2007, this Court denied Van Eeghen's motion to dismiss due to lack of personal jurisdiction and based on forum non convenens.  Doc. # 61.

## II. ORDER

A.  Legal Standard

 i.  Motion for Reconsideration

Rule 54(b) states:

[A]ny order or other decision, however designated, that
adjudicates fewer than all the claims or the rights and
liabilities of fewer than all the parties does not end the

> action as to any of the claims or parties and may be
> revised at any time before the entry of a judgment
> adjudicating all the claims and all the parties' rights and
> liabilities.

However, E.D. Cal. L. R. 78-230(k) states, amongst other things,

that a party moving for reconsideration must show:

> [W]hat new or different facts or circumstances are claimed
> to exist which did not exist or were not shown upon such
> prior motion, or what other grounds exist for the motion,
> and why the facts or circumstances were not shown at the
> time of the prior motion.

"To succeed in a motion to reconsider, a party must set forth

facts or law of a strongly convincing nature to induce the court

to reverse its prior decision." Hansen v. Schubert, 459

F.Supp.2d 973, 998 (E.D. Cal. 2006); see also United States v.

Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001)

("A party seeking reconsideration must show more than a

disagreement with the Court's decision, and recapitulation of

the cases and arguments considered by the court before rendering

its original decision fails to carry the moving party's

burden.")(internal citations omitted).

   ii.   Motion for Summary Judgment/Adjudication

     Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with affidavits, if any, show that there is no genuine issue of

material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of

summary judgment "is to isolate and dispose of factually unsupported claims and defenses." <u>Cleotex v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 447 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e) and citing <u>Celotex</u>, 477 U.S. at 323). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]." <u>Anderson</u>, 477 U.S. at 252. This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

B.  Motion for Reconsideration

Van Eeghen seeks reconsideration of this Court's May 21, 2007 Order on the basis that new facts and law acquired after the issuance of the Order bear substantially on the factors considered by this Court in denying Van Eeghen's prior motion to dismiss.  Def's Mot., Doc. # 119, at 11-12.  Specifically, Van Eeghen argues it recently discovered that (1) European domiciled witnesses for all parties out number U.S. citizens more than two-to-one; and (2) DFI, the only California Corporation in the suit, officially ceased operations in October 2007, and sold all assets by December 2008.  Id.  Van Eeghen's arguments, however, are not new and do not warrant a reversal of this Court's prior decision.

As this Court held in its May 21, 2007 Order, personal jurisdiction exists based upon Van Eeghen's minimum contacts in California.  Specific personal jurisdiction exists when: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed [itself] of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of

jurisdiction is reasonable."[3]  <u>Bancroft & Masters, Inc. v.</u>
<u>Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000).

As more extensively discussed in the May 21, 2007 Order, Van Eeghen purposefully availed itself of the privilege of conducting business in California.  Under its contract with IFF, Van Eeghen agreed to buy its onion powder from DFI, a California Corporation.  Van Eeghen instigated the purchase of onion powder from DFI by reaching out to DFI via email to place orders.  Furthermore, Van Eeghen employees visited DFI in California every 12 to 18 months "to discuss ongoing business."  Doc. # 61 at p. 4.  The combination of Van Eeghen's California directed activities constitutes purposeful availment.  The fact that DFI is now out of business or that it appears more witnesses may reside in the Netherlands does not change this Court's analysis with regard to finding specific personal jurisdiction.  As such, this Court continues to find that this dispute arises from Van Eeghen's forum-related activities and that it would not be unreasonable for the Court to exercise specific jurisdiction in this case.

---

[3]  The jurisdictional analyses under state and federal law are the same in this case because California's long-arm jurisdictional statute is coextensive with federal due process requirements.  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800-01 (9th Cir. 2004).

Furthermore, none of the newly acquired facts or law lead this Court to reconsider its prior ruling on the issue of forum non conveniens.  "A party moving the trial court to dismiss on ground of forum non conveniens has the burden of showing: '(1) the existence of an adequate alternative forum, and (2) that the balance of private and public factors favor dismissal.'" Ceramic Corp. or America v. Inka Maritime Corp., 1 F.3d 948, 949 (9th Cir. 1993).  "This showing must overcome the 'great deference . . . due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown."  Lockman Found. V. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991).

As discussed in the prior Order, although the Netherlands is an adequate alternative forum, the balancing of the relevant private and public factors does not strongly favor Van Eeghen. Even with the allegedly new acquired facts that European domiciled witnesses outweigh U.S. domiciled witnesses and that DFI is no longer in business, these factors do not tip the balance of this Court's prior analysis.  Van Eeghen is still unable to satisfy the heavy burden of showing forum non conveniens.

Here, DFI and IFF are both residents of the United States; thus this forum is more convenient for two of the three parties

to this case.  Van Eeghen's arguments regarding costs and inconvenience of forcing it to litigate this matter in California, conversely apply to both IFF and DFI should they have to litigate in a foreign jurisdiction.  IFF's records, pertaining to the Agreement at issue and the business transactions associated with it are in New York.  DFI's witnesses and documents relating to the order, purchase, and irradiation of the subject onion powder are located in California.  The parties' contracts provide that the dispute is to be governed by New Jersey law and a California court is more capable of interpreting and applying New Jersey law than a court in the Netherlands.  Finally and perhaps most persuasively, this litigation arises from the solicitation, manufacture, sales and purchase of products from California and as such there are not costs associated with resolving a dispute that is unrelated to this forum.  Accordingly, considering the relevant private and public factors applicable to this case as more thoroughly analyzed in this Court's May 21, 2007 Order, those factors weigh in favor of proceeding in this forum.  In short, Van Eeghen has not raised new or different facts or circumstances which convince this Court to reconsider and reverse its May 21, 2007 Order.  The Court's prior conclusion that Van Eeghen failed to present a compelling case that the exercise of jurisdiction would be unreasonable still stands.  See Roth v. Garcia Marquez,

942 F.2d 617, 625 (9th Cir. 1991).  Accordingly, Defendant Van

Eeghen's motion for reconsideration is DENIED.

C.   Motion for Summary Judgment/Adjudication

        In the alternative, Van Eeghen argues that as a matter of

law Plaintiff has no cognizable right to recovery and thus,

summary judgment should be granted in its favor.  Van Eeghen

relies primarily on two cases, International Flavors &

Fragrances, Inc. v. McCormick & Co., Inc., 575 F. Supp.2d 654

(D.N.J. 2008) and The Travelers Indemnity Co. v. Dammann & Co.,

Inc., 592 F.Supp.2d 752 (D.N.J. 2008), in support of its

argument that Plaintiff has no legal basis for relief.

Specifically, Van Eeghen argues McCormick and Dammann establish

that the economic loss rule under New Jersey law bars

Plaintiff's tort recovery and as such, IFF's tort claims for

product liability (Count III), negligent misrepresentation

(Count VI), breach of implied covenant of good faith and fair

dealing (Count VII) and fraud (Count VIII) are barred as a

matter of law.

        After a thorough review of New Jersey case and statutory

law, this Court finds persuasive Van Eeghen's argument that as a

matter of law IFF cannot recover on a products liability claim

(Count III) under the New Jersey Products Liability Act,

N.J.S.A. 2A:58C-1 et seq. ("NJPLA").  Van Eeghen moves for

summary judgment on Plaintiff's product liability claim on the

basis that it is precluded by the economic loss doctrine.  Under the economic loss doctrine "a plaintiff cannot sue in tort to recover for purely monetary loss -- as opposed to physical injury or property damages -- caused by the defendant."  See McCormick, 575 F.Supp.2d at 656 quoting BLACKS'S LAW DICTIONARY 552 (8th ed. 2004).

The Supreme Court of New Jersey first recognized the economic loss doctrine in Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 561 (1985).  Under New Jersey law, "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence."  Id.  The court concluded that "the U.C.C. is the more appropriate vehicle for resolving commercial disputes arising out of business transactions between persons in a distributive chain," id. at 571, and "that a commercial buyer seeking damages for economic loss only should proceed under the U.C.C. against parties in the chain of distribution," id. at 578.  IFF, however, argues that it is entitled to recovery under the New Jersey Product Liability Act ("NJPLA") because the NJPLA provides a cause of action for harm caused by a product, with "harm" defined as "physical damage to property, other than the product itself."  N.J.S.A 2A:58C-1.

The essential inquiry, then, in determining whether IFF's claim sounds in tort under the NJPLA or in contract under the U.C.C. is whether the damage claimed by IFF was "physical damage to property, other than to the product itself," or was damage "to the product itself." Dammann, 592 F.Supp.2d at 760. IFF argues that the defective product is the irradiated onion powder purchased from Van Eeghen and that the "other property" is flavors and seasonings manufactured with the irradiated onion powder, IFF's contaminated equipment and IFF's customers' food products in which the seasonings were used. Pl's Opp. at 16-17. In other words, IFF argues that the irradiated powder is the "product itself" and that the ingredients later added to the product by IFF make the "other property." Id. at 19. Van Eeghen, on the other hand, contends the damage for which IFF demands recovery is to the "product itself" because its customers bought IFF flavorings (not component onion powder) and because the onion powder is not separable from the other "parts" of the flavorings, but part of an integrated product.

The Supreme Court of New Jersey has not yet interpreted the phrase "physical damage to property, other than the product itself" as used in the NJPLA. As such, this Court looks to the United States District Court for the District of New Jersey for guidance. Deference is normally accorded to a district court's interpretation of the substantive state law in the state in

which the court sits.  Such interpretations are reversed only if "clearly wrong." <u>Power v. Union Pacific Railraod Co.</u>, 655 f.2d 1380 at 1382 (9th Cir. 1981).  The <u>McCormick</u> and <u>Dammann</u> decision are particularly instructive on this issue since in both cases the Court evaluated relevant New Jersey statues and case law and ultimately made a prediction on how the New Jersey Supreme Court would rule.

<u>McCormick</u> involved allegations that contaminated paprika sold by McCormick & Company, Inc. to IFF resulted in damage to the barbeque seasoning into which it was incorporated. McCormick & Company, Inc., a wholesale supplier to IFF, allegedly sold IFF infested paprika, which IFF subsequently used to make barbeque seasoning for Frito-Lay.  IFF incurred expense in supplying customers with replacement product.  IFF sued McCormick & Company, Inc. for breach of express and implied warranty, products liability, and fraudulent concealment/ legal fraud.  <u>McCormick</u>, 575 F. Supp. 2d at 655-656.  McCormick & Company, Inc. moved to dismiss Plaintiff's product liability claim on the ground it was precluded by the economic loss doctrine.  Evaluating New Jersey law, the court relied on the rule that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from those in its distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence.

In its holding that IFF's claims sounded in contract under the U.C.C., not in tort, the Court reasoning that (1) contract principles implemented by the U.C.C. are the appropriate analytical framework when a product fails to fulfill a purchaser's economic expectations; (2) damage that occurs at the core of a commercial transaction is not permitted as a tort claim; (3) injury to other property in the context of a commercial transaction between sophisticated parties is not actionable in tort if it should have been reasonably contemplated by the parties, and; (4) damage to a final product by a defective ingredient is foreseeable and sophisticated parties are capable of protecting themselves from such in a contracting process.  Id. at 659-63.  The court concluded that "if IFF's position were to prevail, 'contract law would drown in a sea of tort.'"  Id. at 663 (quoting E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986)).

In Dammann, IFF sought leave to sue its raw food producer for supplying it with mercury-tainted vanilla beans.  Dammann, 592 F.Supp.2d. at 756, 765.  IFF sought to recover economic losses stemming from adulteraded vanilla beans, including damages to its vanilla extract, other food flavors and the equipment it claimed was contaminated in the extraction process.  Id. at 757.  The Dammann Court held that IFF could not pursue a tort claim under the NJPLA for damage resulting from the

contaiminated vanilla beans.  Id. at 762-763.  The court held IFF's remedies were limited to economic damages consequential to the breach of contract, as enumerated under the U.C.C., and denied IFF's request for leave to add a products liability claim.  Id.

Here, Plaintiff's third claim for products liability (Count III) is based on the same law, the NJPLA, that the McCormick and Dammann courts specifically held did not support products liability recovery for IFF's damaged flavors.  The facts of the instant case are intrinsically similar to the facts underlying the actions in McCormick and Dammann.  This Court finds that under the facts of the instant case contract principles implemented by the U.C.C. are the appropriate analytical framework, not tort law.  The commercial transactions between DFI, Van Eeghen, IFF and IFF Netherlands for onion powder, flavors, seasonings and the like are between sophisticated contracting parties.  As such, damage to the final product by a defective ingredient was foreseeable and the parties were capable of protecting themselves from such damage in a contracting process.  Accordingly, this Court adopts the U.S. District Court of New Jersey's rationale and therefore, similarly finds that as a matter of law to the extent Plaintiff IFF has incurred damages as a buyer its damages are limited to contract damages available under the U.C.C., not in tort.  As

such, Van Eeghen's motion for summary judgment as to Count III

for products liability is GRANTED.

This Court's holding that the products liability claim is

barred as a matter of law however, does not bar all of IFF's

tort claims.   The Supreme Court of New Jersey notes that

"[a]lthough the [NJPLA] excludes damage to the product itself

from the definition of 'harm,' N.J.S.A. 2A :58C-1b(2), the

Legislature did not intend to codify in the [NJPLA] all common-

law remedies.   See N.J.S.A. 2A:58C-1a; Alloway v. General Marine

Indus., L.P., 695 A.2d 664, 274 (N.J. 1997).   A plaintiff may

recover for common-law fraud in addition to rights under the

U.C.C..   See id.   Thus, IFF may recover for fraud and negligent

misrepresentation.   Further, the NJPLA does not extend to or

limit claims from breach of express warranty.   N.J.S.A. 2A:58C-

1b(3).   The McCormick decision specifically noted that IFF would

be able to seek full recovery under a breach of warranty claim.

575 F.Supp.2d at 660, fn. 6.

Here, IFF has raised material issues of fact with regard to

the breach of express warranty, common-law fraud, and negligent

misrepresentation claims.   All of these claims are outside the

scope of the NJPLA and are not covered by the McCormick and

Dammann cases cited by Van Eeghen.   IFF has raised material

questions as to whether Van Eeghen expressly warranted by

contract that the onion powder would be "ONION POWDER NON-

17

TREATED EUR FL" and would not be irradiated.  SDF #10, 13, 15-
16.  IFF has also raised material questions on their claims for
implied warranty, negligent misrepresentation, and fraud.  IFF
alleges that, by contract and other documents, Van Eeghen
represented that the onion powder would not be irradiated and
that IFF relied on these representations and suffered damages by
incorporating the onion powder into the seasonings to be sold to
its clients.  There remain material questions of fact as to
whether Van Eeghen engaged in a scheme to blend irradiated onion
powder with non-irradiated onion powder in an effort to keep IFF
from knowing that the onion powder was, in fact, irradiated.

IFF also has a proper claim for breach of implied duty of
good faith and fair dealing.  It is New Jersey law that each
party to a contract must deal fairly and in good faith with the
other in their performance under the contract." Sons of
Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997).
"[I]n addition to the expressed terms of the contract, New
Jersey law implied an additional term which obligates both
parties to deal with each other in good faith." Id.  Here,
there remains disputed issues of material fact as to whether Van
Eeghen understood IFF's need for non-irradiated onion powder and
the reason for that need, SDF # 9-16;  and whether Van Eeghen
not only breached the contracts in questions, but also whether
it intentionally violated them and tried to conceal the fact in

breach of the duty of good faith and fair dealing under New Jersey law.  SDF # 18-22.

Van Eeghen asserts that IFF has no express indemnity rights against it under any Memorandum of Agreement and thus, cannot recover on Count 4; that IFF is a voluntary payor with respect to the Proctor & Gamble Settlement barring indemnity on that claim; and that IFF failed to perform under the Memorandum of Agreements, thus barring contract recovery against Van Eeghen. As to Plaintiff's contractual indemnification (Count 4) claims, the Court refuses to grant summary judgment because disputed issues of material fact remain including: (1) The existence or non-existence of a contract between Van Eeghen and IFF upon which these claims can be maintained; and (2) Whether Robert Keigzer of Van Eeghen was authorized to execute the contracts and, if not, whether IFF was so advised.  As to Van Eeghen's additional arguments with respect to Counts 1, 2, 4, and 5 summary judgment is denied because disputed issues of material fact exist as to whether Plaintiff failed to perform under the contracts thereby barring recovery against Van Eeghen as a matter of law and whether Plaintiff was a voluntary payor with respect to the Procter & Gamble Settlement.

Finally, Van Eeghen argues it is entitled to summary judgment on all claims by IFF because IFF may not seek damages incurred by its affiliate and wholly owned subsidiary, IFF

Netherlands.  It is well-settled law that in third-party beneficiary contracts, the promisee may seek recovery on behalf of the third-party beneficiary.  <u>See</u> <u>Drewen v. Bank of Manhattan Co. of City of New York</u>, 155 A.2d 529, 532 (N.J. 1959).  The promisee may also seek equitable relief arising therefrom.  <u>See id.</u>  Here, IFF contracted with Van Eeghen for the performance on a supply contract for the benefit of itself and an intended third-party beneficiary, IFF Netherlands.  IFF is a signatory to the contract and therefore may sue for damages to itself and IFF Netherlands.

Accordingly, this Court finds Van Eeghen has failed to adequately support its alternative motion for summary judgment/adjudication as to all causes of action, except for Count III for products liability.  As such, Van Eeghen's alternative motion for summary judgment/adjudication is GRANTED as to Plaintiff's products liability claim (Count III) and DENIED for all other claims.

In addition, Van Eeghen's motion for summary judgment/adjudication on DFI's cross-claim is DENIED.  Given that material issues of fact on DFI's negligent misrepresentation claims against Van Eeghen remain to be resolved and DFI's indemnity and equitable contribution claims remain viable, summary judgment in Van Eeghen's favor cannot be granted.

III. ORDER

For the above reasons, this Court

      (1) DENIES Van Eeghen's Motion for Reconsideration

      (2) GRANTS Van Eeghen's Motion for Summary

Judgment/Adjudication on Plaintiff's claim for

products liability (Count III);

      (3) DENIES Van Eeghen's Motion for Summary

Judgment/Adjudication on all other claims in

Plaintiffs First Amended Complaint; and

      (4) DENIES Van Eeghen's Motion for Summary

Judgment/Adjudication on Cross-Defendant DeFrancesco &

Sons, Inc.'s Cross-Claim.

IT IS SO ORDERED.

Dated:  November 4, 2009

                    JOHN A. MENDEZ,
                    UNITED STATES DISTRICT JUDGE